J-A12018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DANIELLE FISHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| A.O. SMITH HARVESTORE PRODUCTS, | : | |
| INC.; A.O. SMITH CORPORATION; A.O. | : | |
| SMITH (HARVESTORE PRODUCTS); | : | |
| HARVESTORE SYSTEMS, T/D/B/A | : | |
| HARVESTORE; COLUMBIAN TEC TANK; | : | |
| CST INDUSTRIES, INC.; AND PENN | : | |
| JERSEY PRODUCTS, INC. | : | |
| | : | |
| APPEAL OF: CST INDUSTRIES, INC. | : | No. 727 EDA 2013 |

Appeal from the Order Entered February 8, 2013,
In the Court of Common Pleas of Bucks County,
Civil Division, at No. 2011-03913.

| | | |
|---|---|---|
| DANIELLE FISHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| A.O. SMITH HARVESTORE PRODUCTS, | : | |
| INC.; A.O. SMITH CORPORATION; A.O. | : | |
| SMITH (HARVESTORE PRODUCTS); | : | |
| HARVESTORE SYSTEMS, T/D/B/A | : | |
| HARVESTORE; COLUMBIAN TEC TANK; | : | |
| CST INDUSTRIES, INC.; AND PENN | : | |
| JERSEY PRODUCTS, INC. AND LEONARD | : | |
| P. KRESGE, INDIVIDUALLY AND D/B/A | : | |
| PROVIDA DAIRY FARM | : | |
| | : | |
| APPEAL OF: CST INDUSTRIES, INC. | : | No. 1960 EDA 2013 |

Appeal from the Order Entered June 13, 2013,
In the Court of Common Pleas of Bucks County,
Civil Division, at No. 2011-03913.

---

*Retired Senior Judge assigned to the Superior Court.

J-A12018-14

DANIELLE FISHER                  :      IN THE SUPERIOR COURT OF
                                 :           PENNSYLVANIA
          v.                     :
                                 :
A.O. SMITH HARVESTORE PRODUCTS,  :
INC.; A.O. SMITH CORPORATION; A.O.  :
SMITH (HARVESTORE PRODUCTS);     :
HARVESTORE SYSTEMS, T/D/B/A      :
HARVESTORE; COLUMBIAN TEC TANK;  :
CST INDUSTRIES, INC; AND PENN    :
JERSEY PRODUCTS, INC.            :
                                 :
APPEAL OF: CST INDUSTRIES, INC.  :      No. 2000 EDA 2013

Appeal from the Order Entered June 13, 2013,
In the Court of Common Pleas of Bucks County,
Civil Division, at No: 2011-03913.

BEFORE:  SHOGAN, STABILE and PLATT*, JJ.

CONCURRING and DISSENTING MEMORANDUM BY SHOGAN, J.:

**FILED DECEMBER 09, 2014**

I agree with the learned majority's interpretation of Illinois law.  I further agree that A.O. Smith was not entitled to recover attorney's fees. However, upon review of the plain language of the Asset Purchase Agreement ("APA") between A.O. Smith and CST, Industries, Inc. ("CST"), I do not agree that a genuine issue of material fact exists with regard to CST's obligation to indemnify A.O. Smith.  Thus, I must respectfully dissent from the majority's position on the indemnification issue.

The record confirms that A.O. Smith sold its Harvestore Division automated products line, including roller mills, to Recknell Industries, Ltd. in

-2-

September 1996 but retained its liabilities, including pending or potential litigations involving automated products manufactured before 1996. Recknell Agreement, 9/3/96, at ¶ 3.1.

A.O. Smith dissolved the Harvestore Division, transferring its assets and liabilities in July 1997 to a new division of A.O. Smith, Engineered Storage Products Company ("ESPC"). Upon acquiring the assets and liabilities of the Harvestore Division, ESPC entered the business of designing, manufacturing, and selling liquid and dry bulk storage tanks. Among the liabilities ESPC acquired were those A.O. Smith retained as part of the Recknell Agreement: pending or potential claims for damages related to Harvestore automated products manufactured before 1996, including the roller mill at issue, which was produced in 1981.

In December 2000, pursuant to the APA, A.O. Smith sold substantially all of ESPC's operating assets and certain liabilities to CST. APA, 12/15/00, at Preamble. The APA includes among the liabilities assumed by CST a category entitled "Products Liability." APA §§ 1.2.1, 1.5(o), 2.13, 2.22, and Exhibits 2.13, 2.22. Itemized under that broad heading were six cases: Item 2 involved a Harvestore silo; item 3 involved a sugar silo; item 4 involved a storage tank; item 5 involved a roller mill; item 6 involved a leaky tank; and item 7 involved an auger. N.T. (Wagner Deposition), 9/21/12, at 108–112.

Unlike the majority, I do not consider dispositive of the indemnification issue ESPC's status as a division or the fact that it is not in the roller mill business. Pursuant to the definition of "Assumed Liabilities," CST acquired:

> the following liabilities of the Seller relating to the Division [ESPC] ...(A) the current portion of **all liabilities** of the Division as set forth on the face of the Closing Balance Sheet... (B) **all of the Division's obligations and liabilities** arising under the "Contracts"... (C) **all liabilities in the nature of product liability, including, without limitation,** any liability for claims made for injury to person, damage to property or other damage arising from, caused by or arising out of any product designed, manufactured, assembled, installed, sold, lease or licensed, or any service rendered by the Division, prior to the Closing Date...

APA, 12/15/00, at ¶ 1.2.1 <u>Definitions</u> (emphasis supplied). In light of the broad sweep of this definition, CST's argument that it is not responsible for the Ms. Fisher's roller mill liability because it did not make the roller mill relies on too narrow a perspective. The definition of "Assumed Liabilities" refers to "all liabilities in the nature of product liability" and includes as a specific example "any liability for claims . . . arising out of any product . . . designed, manufactured, assembled, installed, sold, lease or licensed by the Division, prior to the closing date." APA, 12/15/00, ¶ 1.2.1. Inclusion in the definition of the specific example of product liability claims related to an ESPC product or service does not negate the general reference to "all liabilities in the nature of product liability, including, without limitation," those involving roller mills and augers. In short, the plain language of the APA indicates that CST was acquiring from ESPC the broad category of

product-liability-based liabilities, not liabilities based on specific products, *i.e.*, tanks, silos, augers, or roller mills. As the trial court concluded, the APA's language "indicates the parties' intent to transfer product liability cases, as a group, to CST." Trial Court Opinion, 10/1/13, at 7.

A.O. Smith's performance pursuant to section 11.1(vi) of the APA supports this interpretation. As the trial court explained, that section obligated A.O. Smith "to cover any litigation liability <u>assumed by CST</u> within the first three years of the contract date." Trial Court Opinion, 10/1/13, at 9 (underscore in original; citing APA, 12/15/11, § 11.1(vi)). A.O. Smith paid damages out of its reserves to settle two of the itemized liabilities before December 15, 2003: ***Smith***, which involved a Harverstore roller mill, and ***Woods***, which involved a Harvestore auger. "In contrast, <u>Fisher</u> was settled on February 4, 2013, well outside of A.O. Smith's reimbursement obligation period." ***Id.*** (citing APA § 11.7(e) ("… that in no event shall [A.O. Smith] have any liability under Section 11.1(vi) for claims for any liability or obligation which arises more than three years from the closing date.")). A.O. Smith made these settlement payments because the claims sounded in product liability, not because of the nature of the specific product involved. Notably, although it is in the storage tank business, CST agreed that it assumed liability for the auger case, ***Woods***. A.O. Smith's Motion for

Summary Judgment on Crossclaim, Exhibit 4 (Deposition of John Farris at 12:9–17, 44:15–20).

Similarly sounding in product liability, Ms. Fisher's claim falls under the broad coverage of section 2.22 as a liability assumed by CST. However, because it arose after A.O. Smith's payment obligation ended, CST was responsible for indemnifying A.O. Smith for payments made in settlement of Ms. Fisher's product liability claim. The fact that her particular claim involved a roller mill is not relevant to CST's obligation to indemnify A.O. Smith for product liability claims in general.

Based on the foregoing, I would affirm the trial court's order granting summary judgment to A.O. Smith on the issue of indemnification. Moreover, I would affirm on the basis of the trial court's sound reasoning.